THOMAS HOVEY GAGE, public administrator, *vs.* BOSTON
NATIONAL BANK.

Worcester.    September 27, 1926. — November 23, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Bank.    Agency,* Agent's liability to principal.    *Contract,* Implied.

A national bank in Boston, which accepts funds for transmission in reichs-
marks to a designated person in Lithuania under a contract providing
that it "acts as agent only for the sender," that it "is to forward the
money from any European Post Office or Correspondent to the required
address," and that its liability "is to be no greater than the liability
of the European Post Office or Correspondent to us, and all claims
in case of loss of money to be adjusted only when the amount is
received from the European Post Office or Correspondent," is under
obligation as the sender's agent to act in good faith and to exercise
ordinary skill and prudence as well as to inform the plaintiff of all
material matters coming to its knowledge affecting his rights and
interests; and if, after the national bank received money in the cir-
cumstances above described in May, 1921, it was informed in No-
vember, 1921, that the beneficiary had died, and later that no reply
could be got from the beneficiary's heirs, but the bank did not reply to
repeated requests by the sender for information and for action until
October, 1924, when reichsmarks had become worthless, the sender
had a right to rescind the contract and to recover the amount he had
paid to the bank.

CONTRACT, with a declaration in two counts and a bill of
particulars for the first count; the first count being for $500,
money had and received by the defendant to the plaintiff's
use, and the second count for money alleged to be due the
plaintiff upon his rescinding the contract described in the
opinion.    Writ dated January 16, 1925.

In the Superior Court, the action was heard upon evidence
and agreed facts by *Hammond,* J., without a jury.    Material
evidence and facts are stated in the opinion.    The defendant
asked for the following rulings:

"2.    That the plaintiff is bound by the terms of the con-
tract.

"3.    The funds having been sent, the contract was com-
pleted and not executory, and the plaintiff cannot recover

against the defendant in an action for money had and received.

"4. That there is no evidence in this case of such conduct on the part of the defendant that would warrant an election on the part of the plaintiff to disregard his contract and demand restitution.

"5. In forwarding the marks to the Riga Commercial Bank, the Boston National Bank complied with its contract, and no further duty rested upon the defendant.

"6. Upon forwarding the marks to the Riga Commercial Bank, the Riga Commercial Bank became the agent of the plaintiff.

"7. Upon forwarding the marks to the Riga Commercial Bank, the defendant was discharged from all legal obligations to the plaintiff.

"8. No duty rested upon the defendant to return said moneys unless the moneys were returned to it by its correspondent bank.

"9. No rescission can be had by the plaintiff after the defendant had remitted its funds to its correspondent bank.

"10. Failure to return the money or receipt under the circumstances shown by the agreed statement of facts does not constitute such a breach of contract as would entitle the plaintiff to recover in this action.

"11. If it be found that the plaintiff is entitled to recover, he would only be entitled to recover the value of the marks forwarded at the rate of exchange prevailing on the day when he should have become entitled to a return of the same.

"12. The defendant did not agree to transmit the physical specie delivered to it, but to transmit the equivalent currency value at that time to the place of destination, and thereafter should it be found that there is an obligation on the part of the defendant to return what the plaintiff has sent, the plaintiff would be entitled to the equivalent currency value and no more."

The foregoing requests were refused; number 6 being refused with the comment that it was inapplicable, and number 10 with the comment that it was immaterial.

There was a finding for the plaintiff in the sum of $516.17. The defendant alleged exceptions.

*G. A. White,* (*M. S. June* with him,) for the plaintiff.

*A. A. Ginzberg & A. M. Ginzberg,* for the defendant, submitted a brief.

BRALEY, J.   It having become necessary for the plaintiff in the settlement of the estate to pay to the intestate's mother Eva Dudonis, who was an heir residing in Lithuania, $500, he delivered on May 7, 1921, a check payable to the defendant bank which agreed to transmit the amount in Lithuanian reichsmarks and obtain her receipt. The "remittance order," accepted by the plaintiff May 10, 1921, states as condition, "It is expressly agreed that the Boston National Bank acts as Agent only for the sender. . . . The Boston National Bank, its Correspondent or Agent is to forward the money from any European Post Office or Correspondent to the required address. . . . The liability of the Boston National Bank to the sender is to be no greater than the liability of the European Post Office or Correspondent to us, and all claims in case of loss of money to be adjusted only when the amount is received from the European Post Office or Correspondent. . . . Refunds will be made at rate of exchange prevailing on date of refund. . . . This receipt must be produced when making inquiries regarding this order." The defendant forwarded to the Riga Commercial Bank Schaulen Branch the amount in Lithuanian reichsmarks and on November 23, 1921, its correspondent wrote the defendant that, "The money and the receipt for this beneficiary has been returned to us today with the remark that Eva Dudonis has died, of which kindly take note."

The correspondent bank was the defendant's agent and being unable to make delivery the defendant was entitled to a return of the funds. The plaintiff on November 30, 1921, notified the defendant that he had not received the receipt, and on July 10, 1923, he wrote defendant calling its attention to the transaction and insisting "that you give the matter your attention." But the defendant made no reply. The Riga Commercial Bank wrote the

defendant May 13, 1924, "We are in receipt of your favor of the 18th March last and beg to inform you that the above mentioned money order was neither paid to the beneficiary who at the time of the transmission died, nor to her heir or heirs. In spite of our repeated requests and communications the heir or heirs of E. Dudonis, died they neither replied nor did we receive any other information in the matter. Under these circumstances we consider your instructions as cancelled and shall be glad if you please confirm." The defendant on October 10, 1924, sent a copy of this letter to the plaintiff with a request for instructions as to what "you want done with the . . . 24,000 Marks." The plaintiff replied October 14, 1924, that he "should like either the receipt of the heirs or the money back, in accordance with my original instructions. I should think that you would ask your correspondents to return the funds." The record shows that during a period beginning November 30, 1921, and ending October 14, 1924, not only in writing but orally the plaintiff repeatedly asked the defendant for information and requested that some action be taken and the only result was the statement of the defendant that it would endeavor to trace the funds and report to the plaintiff. It also asked for further time. But notwithstanding an interval of two and one half years elapsed, the only report received by the plaintiff was the letter of October 10, 1924, and the correspondence between the defendant and the Riga Commercial Bank was never disclosed to the plaintiff, except as shown by a copy of the letter from that bank to the defendant, which was enclosed in the letter of the defendant to the plaintiff October 10, 1924.

The defendant as the plaintiff's agent was bound to act in good faith, and to exercise ordinary skill and prudence as well as to inform the plaintiff of all material matters coming to its knowledge affecting his rights and interests. *Merchants Bank at Baltimore* v. *Merchants Bank at Boston,* 6 Met. 13. *Holmes* v. *Cathcart,* 88 Minn. 213, 216. The money could be used only as the plaintiff's money for the purposes of the agency. If the death of Eva Dudonis made further performance impossible, it was the duty of

the defendant promptly to inform the plaintiff of the event. The agreed facts warranted the judge's finding that this had not been done, and that, when the plaintiff was so notified, the marks were worthless. The plaintiff therefore could rescind and recover the money the defendant was bound to repay. *Earnshaw* v. *Whittemore,* 194 Mass. 187, 192. *Martin* v. *Cunningham,* 231 Mass. 280, 284. The cases of *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, *Alemian* v. *American Express Co.* 237 Mass. 580, *Commissioner of Banks* v. *American Express Co.* 249 Mass. 177, *Skopetz* v. *American Express Co.* 251 Mass. 136, on which the defendant relies are not on the present record in conflict with this result.

We find no error in the refusal of the defendant's requests in so far as argued.

*Exceptions overruled.*