NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-287

GEORGE H. WHEATON & another[1]

vs.

ANNA COLLETTA & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant Anna Colletta appeals from a Superior Court judgment, after a bench trial, that found (1) that she violated G. L. c. 93A, and (2) that she breached fiduciary duties to the plaintiff, George Wheaton, in connection with the sale of George Wheaton's (George or plaintiff)[3] home. Colletta was a licensed real estate broker at the time of the sale in December of 2020, and George's position at trial was that Colletta had acted as an

_____

[1] Shirley Skaggs, as conservator and next friend of George H. Wheaton.

[2] Margaret Wheaton; Select Realty Trust; and Joseph Badolato, Curtis Lanciani, and Doug Sylvester, as cotrustees of Select Realty Trust.

[3] Because of their common surname, we refer to George Wheaton and Margaret Wheaton by their first names.

"undisclosed dual agen[t]" for both him as the seller, and for Select Realty Trust (Select Realty) as the buyer. For the reasons that follow, we affirm the judgment as to the chapter 93A claim. We reverse the judgment as to the breach of fiduciary duty claim, as there was insufficient evidence to conclude that Colletta owed fiduciary duties to George.

Background. The events at issue began in the spring of 2020, when Margaret Wheaton, George Wheaton's sister-in-law, brought Colletta to George's home. Margaret Wheaton and Colletta were family friends; at one point, Colletta had been married to Margaret's cousin. Margaret was concerned that George was thinking of selling his home to one of his neighbors, and that the price offered ($150,000 or $190,000) was far too low. Colletta was at that time a licensed real estate salesperson. Margaret asked Colletta to visit George, and to "look at the house and tell me what you think."

Colletta thereafter introduced a potential buyer -- Select Realty, one of the principals of which was Curtis Lanciani, who Colletta was then dating. George negotiated with Lanciani, arriving at a price of $400,000 for the home. The home was assessed for $817,700. Colletta testified that she was not involved in negotiating the price on George's behalf, and there is no evidence that she was.

2

Colletta prepared an offer to purchase, which she provided to Margaret and to Select Realty. George signed the agreement, which called for a closing date in late July of 2020. The agreement did not identify Colletta as the real estate agent for either party, and there was no evidence introduced that Colletta was to be compensated by the seller, George, in connection with the sale. Indeed, both Margaret and Colletta testified that George was adamant that he did not want a real estate agent to work for him.

On the other hand, there was ample evidence that the buyers considered Colletta to be the buyers' agent, and that the buyers expected that, if and when they resold the property, Colletta would act as their agent and be compensated accordingly. All three principals of Select Realty stated in interrogatory answers that Colletta was the real estate agent, and one of the principals clarified that she was "acting as real estate agent on behalf of Select Realty Trust." The principals discussed, over text message, "giv[ing] Anna [Colletta] back the listing" when reselling the property. No one disclosed this expectation to George or to Margaret. Moreover, Colletta had a romantic relationship with a principal of the buyer, Lanciani. She did not disclose that relationship to George or Margaret either.

The closing did not happen in July of 2020, as the offer provided. George had signed a purchase and sale agreement in May of 2020, which was prepared by Select Realty's attorney.[4] However, around that time (the spring of 2020) it became increasingly apparent to Margaret that George was struggling mentally. Margaret became George's attorney-in-fact in June of 2020. Also in June of 2020, George's sister, plaintiff Shirley Skaggs, came to Massachusetts and began residing with George; thereafter, Skaggs brought George to live with her in Kentucky. Skaggs also retained a lawyer, Peter Marino, and sought to have Margaret's power of attorney revoked. Relevant here, Marino called Colletta at some point after the purchase and sale agreement was signed, but prior to the December 2020 closing; as a result of this call Colletta was aware, before the closing, that there was a lawyer purporting to represent George's interests.

As indicated, the closing with Select Realty occurred in December of 2020. George was not present. Margaret signed the documents on behalf of George.[5] Colletta also was present. No

---

[4] The purchase and sale agreement also did not identify Colletta as a broker for either party. The sections of the printed form agreement referring to brokers stated, "N/A."

[5] Margaret purported to sign the documents as attorney-in-fact for George. The judge did not make findings regarding

4

one was present from Select Realty; an attorney-in-fact signed on its behalf. No one notified the lawyer, Marino, that the closing was going to occur.

This lawsuit was filed in January of 2021. The plaintiffs are (1) George, and (2) Skaggs, as George's conservator and next friend. Margaret and Select Realty initially were the named defendants; in February of 2022, the complaint was amended to include Colletta as a defendant. After a bench trial, the judge found, among other things, that Colletta violated G. L. c. 93A, and also that Colletta breached fiduciary duties that she owed to George. By agreement with the parties, the judge's findings were abbreviated, pursuant to rule 20(2)(h) of the Rules of the Superior Court (2018).[6] The judge awarded $25,000 in damages on each of the c. 93A and fiduciary duty counts, yielding a total of $50,000 in damages as to Colletta. Colletta appeals.[7]

Discussion. 1. Chapter 93A claim. We first address Colletta's challenge to the sufficiency of the evidence that she

_____

whether the power of attorney naming Margaret as attorney-in-fact was then valid, and the issue is not before us.

[6] The judge's finding appeared, in form, like a civil jury verdict. Rule 20(2)(h) states that all parties may agree, among other things, to "[t]rial to a judge without a jury with or without additional conditions (by way of illustration: waiver of detailed written findings of fact and rulings of law . . . )."

[7] The judge also awarded $200,000 in damages against Select Realty. Select Realty did not appeal.

5

violated chapter 93A.  To establish a violation of G. L. c. 93A, § 2, the plaintiff was required to prove:

> "first, that [Colletta] has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that [George] suffered an injury; and fourth, that [Colletta's] unfair or deceptive conduct was a cause of the injury."

Rafferty v. Merck & Co., 479 Mass. 141, 161 (2018), quoting G. L. c. 93A, § 2 (a).  See Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615-616 (2009).  The thrust of Colletta's argument is that the evidence did not establish that she acted in "trade or commerce" with respect to the sale of George's house.  Rather, Colletta argues that she was doing a favor for a friend.  Colletta was not compensated by George with respect to the transaction, and argues that she was not involved in the negotiations for the sale.

We are satisfied that there was sufficient evidence of a violation of G. L. c. 93A.  As to the "trade or commerce" issue, "[t]he statute is intended to apply to individuals acting in a business context and is therefore not applicable 'where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business'" (citation omitted).  Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 69 (2021).  However, at the time the transaction began, Colletta was a practicing real estate salesperson; by the

6

time of the closing, she was a licensed broker. When acting as such, she met the standard of acting "in a business context." See Rousseau v. Gelinas, 24 Mass. App. Ct. 154, 158-159 (1987) (broker subject to c. 93A when selling property that broker owned himself, where broker owned several other properties and was "actively involved in every stage of the real estate transaction"). And in this instance, there was more than sufficient evidence to find that Colletta acted as a real estate salesperson on behalf of Select Realty, the buyer. Colletta introduced Select Realty to the property. The principals of Select Realty understood that Colletta was acting as Select Realty's agent. Colletta prepared the offer to purchase and helped to facilitate the closing. And finally, there was evidence indicating that Colletta stood to gain financially from her efforts; Select Realty was in the business of buying, improving, and reselling property, and there was evidence that the principals of Select Realty expected Colletta to represent Select Realty as the seller's agent for the resale of the property.

There was also more than sufficient evidence that Colletta committed an unfair or deceptive act or practice. It is well settled that what qualifies as an unfair or deceptive trade practice is not strictly limited by common law concepts; rather,

7

in determining unfairness, "[w]e look to '(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers . . . .'" UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 412 (2019), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).  See H1 Lincoln, Inc. v. South Washington Street, LLC, 489 Mass. 1, 24 (2022) ("a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition" [quotation and citation omitted]).  Here Colletta's conduct fell within the above definitions.  While as we discuss below Colletta's relationship with George was not a fiduciary relationship, Colletta did provide advice to Margaret and George, and she introduced them to Select Realty.  Colletta did so while failing to disclose her relationships with Select Realty, which included a future financial interest in having Select Realty be the buyer, as well as a personal relationship with Lanciani.  And although Colletta knew that George was failing mentally and that George's sister had retained a lawyer to represent his interests, Colletta moved forward with the property closing with Margaret representing George, and without informing the lawyer.

8

The price was well below the property's assessed value.  A factfinder could reasonably find that these acts were, at the least, unscrupulous and unethical.  See Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 289-291 (1985) (unfair and deceptive practice where defendant, a broker, used his position as member of town board of health to approve defective sewer system on property he was selling).  Moreover, based on the above facts, a factfinder could reasonably find that Colletta was in fact acting as an agent for the buyers.  The plaintiff's expert testified that as a real estate agent, Colletta had a professional obligation to disclose to the seller which party she was representing -- meaning that, at the least, Colletta needed to disclose to George and Margaret that she was representing Select Realty.  The failure to do so also supports the finding of an unfair or deceptive practice.

2.  Breach of fiduciary duty.  We reach a different result with respect to the plaintiff's claim for breach of fiduciary duty.  To establish such a claim, the plaintiff needed to first establish that a fiduciary relationship existed between George and Colletta.  See Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842 (2017).  Fiduciary relationships are not lightly declared to exist, and it was the plaintiff's burden to prove that such a relationship existed here, id. at

9

844 n.15. See Aliberti, 483 Mass. at 405-406, 409, quoting Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 855 (2005) (no fiduciary relationship without "any common-law fiduciary obligation, [or] any special relationship of trust, confidence, or reliance"); Locator Servs. Group, Ltd., supra at 853 (fiduciary relationships recognized "in limited circumstances").

In this case the thrust of George's argument is that Colletta was his fiduciary because Colletta (allegedly) was working as his real estate agent. If such an agency relationship existed it likely would give rise to fiduciary duties, see Gagnon v. Coombs, 39 Mass. App. Ct. 144, 154 (1995), but George's evidence failed to show that such an agency existed. George did not testify. Both Margaret and Colletta testified unequivocally that George insisted that he did not want to have a real estate agent represent him. The offer to purchase that Colletta prepared did not identify Colletta as the seller's agent, and Colletta was not compensated as the seller's agent with respect to the sale.

It is true, of course, that the judge was not required to credit Colletta's testimony, or Margaret's; disbelief of their testimony, however, does not equate to affirmative evidence of a fiduciary relationship. See Kunkel v. Alger, 10 Mass. App. Ct.

10

76, 86 (1980) ("[M]ere disbelief of testimony does not constitute evidence to the contrary. A case lacking adequate affirmative proof is insufficient to support a verdict in favor of the party with the burden on the issue."). Margaret testified that she brought Colletta along to meet George, to look at the house, and to "let [her] know what you [Colletta] think," but providing advice as a friend does not make one a fiduciary. See Cleary v. Cleary, 427 Mass. 286, 293 (1998). Nor does introducing a potential buyer. Margaret squarely rejected the suggestion that Colletta acted as George's agent or that George was relying upon Colletta:

> Q.: "And you would agree that [sic] with me that you were relying on Anna and --"
>
> A.: "No."
>
> Q.: "-- her -- you weren't relying on Anna?"
>
> A.: "No. I don't rely on people like that. I use my Godly good, good brains. And I knew what George wanted. He was adamant about not wanting to have an agent. That is true. She [Colletta] is correct when she said that. He was adamant about that. He says I don't want them walking through my home.
>
> "I says, well, George, you need to have someone. And he said nope. I just want to look at this. And I gave him the paperwork [the offer to purchase]. He took it. He kept it overnight. And when I walked in that next day because he knew I was coming back to pick him up, he told me he had signed it."

11

Margaret's testimony thus does not support the judge's finding that Colletta acted as George's agent and fiduciary.[8] Nor does the testimony of the plaintiff's expert, who was presented as an expert in the practices of real estate agents. The expert had no personal knowledge of George's or Margaret's relationship with Colletta. He testified that he read the deposition transcripts and relevant documents, and that based upon those it was his opinion that Colletta had engaged in an "undisclosed dual agency relationship." But the expert did not point to any particular evidence as a basis for his opinion that Colletta had acted as George's agent; that portion of his testimony was presented as an ipse dixit. An expert's "opinion" must be based in facts, and as to the question whether Colletta acted as George's agent, it was not.

Conclusion. So much of the judgment that awards damages against Colletta pursuant to G. L. c. 93A is affirmed. So much

---

[8] We note that Margaret gave the following answer in response to a question from George's lawyer:

Q.: "And so that's why you wanted to list Anna to come in, to make, to protect George and make sure he got a fair price for his property, right?"

A.: "Correct."

In context, this answer does not suffice as evidence that Colletta actually served as George's agent, and there was no evidence of actions by Colletta that supported such a conclusion.

12

of the judgment that awards damages against Colletta for breach of duty fiduciary is reversed.  The remainder of the judgment is affirmed.  The matter is remanded for issuance of an amended judgment consistent with this decision.

<u>So ordered</u>.

By the Court (Desmond, Ditkoff & Englander, JJ.[9]),

Clerk

Entered: June 6, 2025.

---

[9] The panelists are listed in order of seniority.