THEODORE W. BERENSON *vs.* NATHAN NIRENSTEIN
& others.

Suffolk. March 9, 1950. — July 26, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Fiduciary. Trust,* Constructive trust. *Broker,* Broker's duty of fidelity.

One, who undertakes to negotiate a purchase of property in behalf of another person in the full relation of broker for him as principal, has a fiduciary duty to him.

Allegations in a bill in equity, that the defendant interested the plaintiff in buying shares in a certain corporation, offered "to act as agent and broker for the plaintiff in seeking to buy" the shares, and "represented

that he was peculiarly in a position to negotiate a purchase . . . on behalf of the plaintiff"; that the plaintiff then "retained" the defendant "as his broker and agent to effect a purchase," and the defendant "agreed to act as such broker and agent on behalf of the plaintiff and to use his best efforts" to buy·the shares for the plaintiff, at an agreed commission; and that after some negotiations by the defendant, the plaintiff authorized him to make a firm offer for the shares at a certain price, showed that the full relation of principal and broker came into existence between the plaintiff and the defendant.

In a suit in equity against two defendants to hold one of the defendants as a constructive trustee for the plaintiff of shares of stock in a corporation and to require both defendants to account for profits or damages, a case for such relief was stated by allegations in the bill showing that the first defendant undertook to negotiate a purchase of the shares for the plaintiff in the full relation of broker for him as principal and thereby assumed a fiduciary duty to him, and that at the instigation of and to the profit of the other defendant, who knew of that duty, the first defendant acquired the shares for himself in breach thereof.

BILL IN EQUITY, filed in the Superior Court on February 18, 1949, and afterwards amended, against Nathan Nirenstein, Sherman H. Bowles, and Bowles Lunch, Inc.

By order of *Forte,* J., there were entered interlocutory decrees sustaining demurrers to the amended bill by the defendants Nirenstein and Bowles, and a final decree dismissing the bill. The plaintiff appealed.

*H. B. Ehrmann,* for the plaintiff.

*F. M. Kingsbury,* for the defendant Nirenstein.

QUA, C.J. Material allegations of the amended bill may be summarized as follows: The plaintiff lives in Newton and does business in Boston. The defendant Nirenstein lives and does business in Springfield. In January, 1949, Nirenstein called on the plaintiff in Boston, stated that all the shares of Bowles Lunch, Inc., which had its principal business in Springfield, could be purchased, and offered "to act as agent and broker for the plaintiff in seeking to buy" these shares. The plaintiff expressed interest. Nirenstein handed to the plaintiff detailed audits of Bowles Lunch, Inc., and "represented that he was peculiarly in a position to negotiate a purchase of these shares of stock on behalf of the ·plaintiff because of his knowledge of the situation and his acquaintance with the parties" in Springfield. The

plaintiff then "retained the defendant [Nirenstein] as his broker and agent to effect a purchase of the shares of stock at an agreed commission of Five Dollars ($5.00) per share, to be paid by the plaintiff to the defendant [Nirenstein] at the time when such purchase was consummated, and the defendant [Nirenstein] agreed to act as such broker and agent on behalf of the plaintiff and to use his best efforts to purchase said shares of stock for him." After further conferences and some negotiations by Nirenstein, the plaintiff authorized that defendant to make a firm offer of $70 a share for four thousand seven hundred four shares held by certain trustees. Thereafter Nirenstein, while still representing to the plaintiff that he was acting in the plaintiff's behalf, entered into a written agreement with the trustees for the purchase of the shares himself at $70 a share.

There are further allegations to the effect that the defendant Bowles, with knowledge of the defendant Nirenstein's fiduciary obligations to the plaintiff, induced Nirenstein to break them, to the profit of Bowles, who has acquired some of the assets of the corporation; and that after the bringing of this suit, and after the plaintiff in reliance upon an oral agreement for the settlement of the entire case had permitted a restraining order to be dissolved, the defendant Nirenstein repudiated the settlement, completed his purchase of the stock and started to liquidate the corporation. The prayers are for injunctive relief, that Nirenstein be held as trustee of the purchase agreement and the stock, that Nirenstein and Bowles be required to account for profits or damages, and that the stock be reached and applied in satisfaction of what is found due.

The trial judge sustained demurrers to the bill and stated, not without considerable justification, that he did so in reliance upon *Salter* v. *Beal*, 321 Mass. 105, and the cases there cited.

In *Salter* v. *Beal* the defendant had been employed by the plaintiff to appraise certain machinery which the plaintiff contemplated buying, and had bought the machinery for himself. This court held that no fiduciary obligation was

shown. We do not intend to cast doubt upon the correctness of that decision on the facts. But we reached our conclusion in that case largely, though not wholly, because of a line of cases which appeared to be "authority for the proposition that a mere engagement to buy in behalf of another without more is not deemed in this Commonwealth to create a fiduciary relation." 321 Mass. at page 108. For convenience, we repeat the citations of these cases in the footnote.[1] On the other hand, it is established by a long line of decisions here and elsewhere that the relation of principal and broker is a fiduciary one involving trust and confidence.[2] And a fiduciary is ordinarily chargeable as constructive trustee for the benefit of one rightfully entitled to property acquired by the fiduciary in breach of trust. Restatement: Restitution, §§ 190, 194.

So far as we are aware this is the first time when possible conflict between these two lines of cases has been squarely brought to the attention of this court by the issues and the argument in any case, and it has become necessary to consider them in relation to each other. The fiduciary obligation toward his principal of one who is acting in the full sense as a broker in the sale or purchase of property rests upon fundamental principles of business morality and honor which are of the highest public interest, and which it is the bounden duty of courts to preserve unimpaired. We do not believe that in deciding the cases listed in the first footnote the court had in mind a case where the full relation of principal and broker existed. That the court at one time

[1] *Kendall* v. *Mann,* 11 Allen, 15, 17. *Davis* v. *Wetherell,* 11 Allen, 19, note. *Barnard* v. *Jewett,* 97 Mass. 87. *Fickett* v. *Durham,* 109 Mass. 419. *Parsons* v. *Phelan,* 134 Mass. 109. *Collins* v. *Sullivan,* 135 Mass. 461. *Bailey* v. *Hemenway,* 147 Mass. 326. *Emerson* v. *Galloupe,* 158 Mass. 146. *Bourke* v. *Callanan,* 160 Mass. 195. *Tourtillotte* v. *Tourtillotte,* 205 Mass. 547. *Kennerson* v. *Nash,* 208 Mass. 393, 397. *Southwick* v. *Spevak,* 252 Mass. 354. *McDonald* v. *Conway,* 254 Mass. 429. *Cann* v. *Barry,* 293 Mass. 313, 316. See *Yamins* v. *Zeitz,* 322 Mass. 268, 273.

[2] *Alvord* v. *Cook,* 174 Mass. 120, 126–127. *Carpenter* v. *Fisher,* 175 Mass. 9, 12–13. *Veasey* v. *Carson,* 177 Mass. 117, 120–121. *Quinn* v. *Burton,* 195 Mass. 277, 279. *Dzuris* v. *Pierce,* 216 Mass. 132, 135–136. *Ebert* v. *Haskell,* 217 Mass. 209. *Tracey* v. *Blake,* 229 Mass. 57. *J. C. Penney Co.* v. *Schulte Real Estate Co. Inc.* 292 Mass. 42, 44. *Evatt* v. *Willard D. Martin, Inc.* 302 Mass. 414. *Spritz* v. *Brockton Savings Bank,* 305 Mass. 170, 172. No attempt is made here to cite all the cases for this familiar proposition.

thought a constructive trust might arise in such a case seems apparent from the reasoning of Chief Justice Knowlton in *Clark* v. *Delano*, 205 Mass. 224. It may be significant that in all of the cases in the first list, so far as appears, the relation between the parties was substantially different from that ordinarily obtaining between principal and broker, and in none of them is the principal and broker relation mentioned. Even if this is not a wholly satisfactory distinction, we are nevertheless impelled to the conclusion that at least where, by the conduct of the parties, the full relation of principal and broker has come into existence, including the carrying on of a negotiation between seller and buyer, there has come into existence with it a confidential and fiduciary relation which gives rise to a constructive trust in favor of the principal in property which the broker has acquired for himself in violation of his duty to his principal. We by no means suggest that all of the cases in the first list were wrongly decided, but we do hold that in so far as broad expressions in some of them might be thought at variance with what has just been stated such expressions must be deemed to be qualified by what is here said. That other courts have struggled with similar problems and have reached differing conclusions appears from many cases collected in 42 A. L. R. 28, and 135 A. L. R. 236.

We think that the amended bill in this case sufficiently alleges the existence of a full and complete relation of principal and broker between the plaintiff and the defendant Nirenstein, out of which arose all the fiduciary obligations incident to such a relation, and that the bill sufficiently shows a breach of such obligations by the defendant Nirenstein at the instigation and to the profit of the defendant Bowles. The bill can therefore stand on the theory of a constructive trust in the shares of stock and their proceeds.

It is manifest that the bill is not multifarious.

The interlocutory decrees sustaining the demurrers of the defendants Nirenstein and Bowles are reversed, and

decrees are to be entered overruling the demurrers. The final decree dismissing the bill is reversed, with costs to the plaintiff.                                              *So ordered.*