# ANTHONY WILLIAM RAVOSA vs. NEIL ZAIS, individually & as trustee.[1]

No. 94-P-1527.

Suffolk. December 7, 1995. - February 15, 1996.

Present: ARMSTRONG, PERRETTA, & FLANNERY, JJ.

*Real Property,* Sale. *Frauds, Statute of. Contract,* Sale of real estate. *Sale,* Real estate. *Fraud. Consumer Protection Act,* Availability of remedy.

In a civil case, the judge correctly allowed the defendant's motion for judgment notwithstanding the verdict on counts of breach of fiduciary duty as a broker, misrepresentation and breach of contract, where the parties' oral agreement was one to purchase land which did not satisfy the Statute of Frauds, where there was no evidence the parties had entered into a brokerage contract or that any fiduciary obligations had arisen, and where no detrimental reliance by the plaintiff on the oral agreement was shown. [50-52]

At the trial of a claim for misrepresentation, there was no evidence of false statements of material fact by the defendant made to induce the plaintiff to act, and the judge correctly granted the defendant's motion for judgment notwithstanding the verdict. [52-54]

Where a plaintiff did not prevail on common law claims arising out of an oral agreement to convey real estate, no liability of the defendant arose under G. L. c. 93A, from the same factual circumstances; the judge correctly dismissed that claim. [54-55]

CIVIL ACTION commenced in the Superior Court Department on March 24, 1989.

The case was tried before *John C. Cratsley,* J.

*Dustin F. Hecker* for the plaintiff.

*Fredric L. Ellis* for the defendant.

FLANNERY, J. The plaintiff, Anthony William Ravosa, commenced this Superior Court action against the defendant, Neil Zais, on counts of breach of fiduciary duty as a broker, misrepresentation, breach of contract, and a violation of G. L. c. 93A, §§ 2 and 11. In answer to special questions, a jury

---

[1]Of Red Brick Realty Trust.

found that there was a contract between the parties regarding the purchase, sale, and broker's commission for the Walker Building located at 1228-1242 Main Street in the city of Springfield (locus), that Zais committed a breach of the contract, that his conduct constituted misrepresentation, and that he had agreed to act as a broker for, and had been in breach of his fiduciary duty to, Ravosa. As to each of the common law counts, the jury found that the amount of Ravosa's damages was $680,000. The trial judge allowed Zais's motion for judgment notwithstanding the verdict, and Ravosa has appealed. We affirm.

Our review is to determine "whether, 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 550 (1995), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). With this standard in mind, the jury could have found the following facts.

Since the early 1960s, Ravosa, an attorney, has purchased real estate in the Springfield area, including residential and commercial properties and many of the historic and other buildings surrounding the Springfield courthouses. As of the time of trial, Zais had had over thirty years' experience in real estate and had held a real estate broker's license for approximately twenty years.

During the period from 1980 to 1985, Ravosa planned to develop Court Square in Springfield by accumulating all of the nationally registered historic buildings there, including the locus, and tying them into the Springfield civic center, of which he was chairman of the board from 1978 to 1983. At that time, the locus was owned by Sophie Freedman, a party to an ongoing dispute with Ravosa. Ravosa had made numerous unsuccessful attempts to purchase the locus from Mrs. Freedman through the use of various individuals as straws, and Mrs. Freedman had indicated on several occasions that she would not sell the locus to him.

In late 1984 or early 1985, Ravosa met Zais, whom he knew to be a licensed real estate broker, at the Bar Association, a downtown Springfield restaurant, which Ravosa owned. Zais told Ravosa that he was a broker and stated, "I will get you the building. Don't worry about it, I'll get you

the building." In an ensuing discussion, Zais said that he wanted a commission of $25,000, and it was agreed that how Zais was to acquire the building was left up to him. At a meeting in Ravosa's office a few days later, Zais said that he was going to see Mrs. Freedman and attempt to purchase the locus, and reiterated that the "deal" with Ravosa was for $25,000.[2] It was agreed that Ravosa could reject the deal if the price was too high. Through early 1986, Zais continued to assure Ravosa that Zais would get the locus, and that his "commission" would be $25,000.[3]

In March, 1986, Zais, as trustee of Red Brick Realty Trust, purchased the locus from Mrs. Freedman for $535,000. In early April of 1986, Ravosa learned of Zais's purchase of the locus at that price. Ravosa called Zais to discuss a purchase and sale agreement for the locus in accordance with their oral agreement, and Zais told him, "That's an old deal. It's gone by the boards. We have a new deal. If you want the real estate, you're going to have to pay for it, because I have a buyer sitting in the wings for it." On or about April 8 or 9, 1986, Zais told Ravosa that he wanted $990,000 and that Ravosa had to close the deal by Friday, April 11, or Zais was going to give it to somebody else.

On April 11, 1986, after discussing the matter with his attorney, negotiating with Zais's attorney over two or three days, and reviewing and revising various proposals, Ravosa signed a purchase and sale agreement and made a deposit of $49,000. He decided to do so because he "needed" the locus and he thought it would be better to go forward and purchase the building, and to litigate later.[4] The purchase and sale agreement contained a clause providing that the agreement "sets forth

[2]Ravosa testified that there were no discussions about who was to pay the taxes at the closing or about who would pay attorney's fees in the first or second transaction, as those items were to be worked out later. There also was no discussion concerning the amount to be put down as a deposit or the time frame in which it would be paid. On cross-examination, Ravosa testified that Zais was to buy the real estate as a straw and resell or transfer the locus to him.

[3]From the day that he authorized Zais to buy the locus, Ravosa never attempted to use others to acquire the building. At no time during his conversations with Zais during this period did Ravosa discuss what prices Zais was discussing with Mrs. Freedman.

[4]The plaintiff admitted that he could have withdrawn from the transaction, but did not want to do so because he wanted the building.

the entire agreement between the parties hereto." On June 30, 1986, pursuant to the written agreement, Ravosa purchased the locus from Zais in Zais's capacity as trustee of Red Brick Realty Trust for $990,000.

By complaint filed on March 24, 1989, Ravosa commenced this action. Zais raised the Statute of Frauds as an affirmative defense. In allowing Zais's motion for judgment notwithstanding the verdict, the trial judge concluded that the Statute of Frauds barred Ravosa's common law claims.[5] The judge also found, as matter of law, that there was no fraud in the inducement of the written purchase and sale agreement, and no duress.

1. *The nature of the oral contract and the applicability of the Statute of Frauds.* It is settled law that "[a]n agreement to purchase land and then to convey it in whole or in part to another is 'a contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them,' G. L. c. 259, § 1; and it is none the less within this statute that the purchaser is, or is alleged to be, an agent for that other." *McDonald* v. *Conway*, 254 Mass. 429, 432 (1926). See *Nessralla* v. *Peck*, 403 Mass. 757 (1989). "[N]o implied or constructive trust arises merely because the defendant has agreed orally to buy land as the plaintiff's agent and then has repudiated the obligation and kept the land for himself." *Salter* v. *Beal*, 321 Mass. 105, 108 (1947), quoting from *Cann* v. *Barry*, 293 Mass. 313, 316 (1936). See *Broomfield* v. *Kosow*, 349 Mass. 749, 758 n.1 (1965). It is equally true, however, that "where, by the conduct of the parties, the full relation of principal and broker has come into existence, including the carrying on of a negotiation between seller and buyer, there has come into existence with it a confidential and fiduciary relation which gives rise to a constructive trust in favor of the principal in property which the broker has acquired for himself in violation of his duty to his principal." *Berenson* v. *Nirenstein*, 326 Mass. 285, 289 (1950).

Based upon plaintiff Ravosa's own testimony, the essence

---

[5]The judge also concluded that the parties' oral agreement was merged into their subsequent written purchase and sale agreement and that, as the subsequent agreement was fully integrated, the parol evidence rule precluded admission of oral statements inconsistent with the agreement. In affirming, we need not and do not rely on the merger doctrine or the parol evidence rule, and thus the grounds for our decision are somewhat narrower than those stated by the judge.

of the oral agreement between the parties was that Zais agreed to purchase the locus from Mrs. Freedman and, after having done so and if acceptable to Ravosa, to sell it to Ravosa for $25,000 more than Zais paid for it. There was no evidence more favorable to Ravosa than this testimony, and thus he is bound by it. See *Jacquot* v. *Wm. Filene's Sons Co.*, 337 Mass. 312, 316 (1958); *Gaynor* v. *Laverdure*, 362 Mass. 828, 841 (1973). See also Liacos, Massachusetts Evidence § 2.11, at 58 (6th ed. 1994). On that testimony, there was no issue of fact for the jury. We agree with the judge's conclusion, as matter of law, that Ravosa's testimony established that the parties' agreement was one to purchase land and that, notwithstanding Ravosa's conclusory statements to the contrary, there was no evidence that the parties had entered into a brokerage contract,[6] see *DiBurro* v. *Bonasia*, 321 Mass. 12, 13-15 (1947), or that any fiduciary obligations arose on the part of Zais.[7] Cases on which Ravosa relies are, therefore, inapposite. See *Kinchla* v. *Welsh*, 8 Mass. App. Ct. 367, 370 (1979); *MacGregor* v. *Labute*, 14 Mass. App. Ct. 203, 206-207 (1982); *Dowd* v. *Iantosca*, 27 Mass. App. Ct. 325, 331-332, 334 (1989).

Ravosa correctly asserts that "[a] plaintiff's detrimental

---

[6]As Ravosa was free not to purchase if he found the price unacceptable, the parties plainly contemplated that Zais might own the locus. Ravosa did not participate in the purchase of the locus from Mrs. Freedman, did not provide any of the purchase price paid by Zais, and discovered that Zais had completed the transaction approximately one month after it had occurred. Compare *Nessralla* v. *Peck*, 403 Mass. at 758-759. Where the Statute of Frauds operates to bar recovery against a straw who has failed to convey pursuant to an oral agreement, *id.* at 761-762, we see no basis for a different result merely because the straw has a real estate broker's license. Absent evidence that Zais was acting as a broker for Ravosa, the fact that he had a broker's license, and that Ravosa knew it, without more, is of no significance. The definition of "real estate broker" found in G. L. c. 112, § 87PP, and the provisions of §§ 87QQ through 87DDD¹/₂ of that chapter are inapplicable to the facts of this case.

[7]The relationship between the parties and the nature of their agreement determines whether fiduciary obligations arise. See *Berenson* v. *Nirenstein*, 326 Mass. at 288-289, and cases collected. " '[A] mere engagement to buy in behalf of another without more is not deemed in this Commonwealth to create a fiduciary relation.' " *Id.* at 288, quoting from *Salter* v. *Beal*, 321 Mass. at 108. Here, no fiduciary relationship existed between Zais and Ravosa. So far as appears on Ravosa's own testimony, there was nothing more than a business relationship between two persons experienced in real estate matters. See *Ries* v. *Rome*, 337 Mass. 376, 381-382 (1958). Contrast *Cann* v. *Barry*, 293 Mass. at 316-317.

reliance on . . . an oral agreement to convey property may estop the defendant from pleading the Statute of Frauds." *Nessralla* v. *Peck*, 403 Mass. at 761. Ravosa claims that Zais, by repeatedly and falsely stating his intention to sell the locus to Ravosa for a profit of $25,000, induced Ravosa to refrain from attempting to obtain the locus through any other means (at the lower price sought by Mrs. Freedman, we assume), and that Ravosa relied on Zais's statements to his detriment.[8] We disagree. The evidence at trial was that, despite numerous attempts over several years, Ravosa had had no success in acquiring the locus from Mrs. Freedman directly or through straws. He did not identify at trial any other straw or real estate broker upon whom he would have relied to acquire the locus; indeed, he testified that he did not have any others. "Such illusory 'reliance' on an oral agreement to convey property does not rise to a level which estops the defendant from pleading the Statute of Frauds." *Id.* at 762.

2. *Misrepresentation.* Apart from the misrepresentations regarding the oral contract, Ravosa argues that Zais, during negotiations of the parties' written agreement, made material misrepresentations to Ravosa concerning the existence of another buyer and the area of the building for purposes of inducing him to execute that agreement.

The elements of the tort of misrepresentation are familiar. The plaintiff must show "a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman* v. *Kent*, 31 Mass. App. Ct. 72, 77 (1991). *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 365 (1993). *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 617 n.9 (1994).

Relying on *Kabatchnick* v. *Hanover-Elm Bldg. Corp.*, 328 Mass. 341, 342, 345-347 (1952), Ravosa claims that Zais falsely represented that he had another buyer and that Zais pressured him to purchase the locus at the inflated price of

---

[8] A party's statements of his present intention as to his future conduct may be the basis for a fraud action if the statements misrepresent the speaker's actual intention and the recipient relies upon them to his damage. *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 709 (1990).

$990,000. We think *Kabatchnick* is distinguishable. In that case, the defendant lessors told their commercial lessee, who was occupying the premises under a lease providing for an annual rental of $4,500, that they had a bona fide offer of $10,000 per year for the space from an identified third party, and that, unless the lessee met that offer and signed a twelve-year lease, the lessors would evict him upon the imminent expiration of his existing lease. *Id.* at 342.

In the present case, there was no evidence that Zais represented that he had a bona fide offer at $990,000 from another specific buyer which he would accept if Ravosa did not agree to Zais's asking price.[9] At best, the evidence indicates only that Zais expressed a willingness to deal with other potential buyers, the existence of which might be assumed. As the court in *Kabatchnick* noted, what is actionable in these situations must be decided on a case by case basis, and "liability is made to depend on the degree of thoroughness with which the fraud is perpetrated." *Id.* at 346. Conspicuously lacking here are such "further deliberate affirmations having a tendency to deceive the purchaser" of the sort identified in *Kabatchnick*. *Ibid.* Absent such specific affirmations, the judge was correct in concluding that Zais's general statements fall within the range of acceptable "seller's talk[10]". Compare *Greenery Rehabilitation Group, Inc.* v. *Antaramian,* 36 Mass. App. Ct. 73, 75 (1994).

Nor was there any actionable misrepresentation by Zais as to the size of the building. First, no allegation of this misrepresentation appeared in Ravosa's complaint, this theory having appeared first at trial. Secondly, the evidence established that Ravosa was alerted to any possible discrepancy in build-

[9]Moreover, the evidence, including Ravosa's testimony, established that Zais derived his asking price by multiplying a base price of thirty dollars per square foot times what Zais stated was the area of the building. The price depended upon the area of the building. There was no evidence that Zais represented that a particular buyer had offered a price of either thirty dollars per square foot or $990,000 for the locus.

[10]We agree with the judge's conclusion, as matter of law, that there was no economic duress. See *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.,* 8 Mass. App. Ct. 340, 342 (1979). On this point, comparison with the facts in *Kabatchnick* is instructive.

ing area before executing the purchase and sale agreement.[11] So far as appears, the building area was not a matter of particular importance to Ravosa, and, on this record, that matter was at worst a good faith misstatement by Zais, which provides no basis for damages. Compare *Fernandes* v. *Rodrigue*, 38 Mass. App. Ct. 926, 927-928 (1995).[12]

3. *The c. 93A claim.* On appeal, Ravosa incorrectly asserts only that the jury's findings on the common law claims compel a judgment in his favor on his c. 93A claim. The judge properly could reserve to himself, as he did, all aspects of the c. 93A claim and was not bound by the jury's answers to special questions on the common law claims. See *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 753 (1993); *Velleca* v. *Uniroyal Tire Co.*, 36 Mass. App. Ct. 247, 251 (1994); *Guity* v. *Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 340 (1994). As we have noted, the judge properly granted judgment notwithstanding the verdict on the common law claims, and no c. 93A liability of Zais arises out of the same circumstances. See *McCartin* v. *Westlake*, 36 Mass. App. Ct. 221, 233-234 (1994). Compare *Doliner* v. *Brown*, 21 Mass. App. Ct. 692, 698 (1986); *Madan* v. *Royal Indem. Co.*,

---

[11]Ravosa testified that the building contained approximately 26,500 square feet instead of 33,000 as Zais had stated. Ravosa's former property manager testified that he had done a rough measurement of the exterior of the building for Ravosa prior to the transaction and had determined that the square footage was approximately 25,000 square feet. Ravosa testified that Zais told him that he was relying upon an architect who had given him the numbers and that he did not inspect the building after talking with Zais because "[t]here never was any time." The architect's plans showing the locus to have an area of 33,000 square feet were introduced in evidence.

[12]Proof of damages flowing from the misrepresentations is essential to recovery. *Cardullo* v. *Landau*, 329 Mass. 5, 7 (1952). "A plaintiff in an action of tort for deceit is not entitled to nominal damages merely by proving that the defendant had perpetrated a fraud upon him, but in order to prevail he must prove the extent of the injury that was caused by the defendant's fraud." *Pearl* v. *Wm. Filene's Sons Co.*, 317 Mass. 529, 532 (1945). "Deceit is 'not an absolute wrong, for which the injured person may recover at least nominal damages, like one who sues for breach of contract or the invasion of an absolute right.' *Brackett* v. *Perry*, 201 Mass. 502, 504 [1909]. . . . Where a plaintiff does not prove that he is worse off than if there had been no misrepresentation he has not made out a case of deceit." *Connelly* v. *Bartlett*, 286 Mass. 311, 315 (1934).

26 Mass. App. Ct. 756, 763-764 (1989). Contrast *Chamber-layne Sch.* v. *Banker,* 30 Mass. App. Ct. 346, 353 (1991). There was no error in the judge's dismissal of the c. 93A claim.

*Judgment affirmed.*