Haggerty, J.
Plaintiff Robert Watson (“Watson”) brought this action against defendant Nashawtuc Country Club, Inc. (“Nashawtuc”) alleging that Nashawtuc made misrepresentations to him about the membership turnover rate and the amount of time he would have to remain on the Golf Wait List (“GWL”) until he could become a full golf member at Nashawtuc. Watson originally filed a complaint with this court alleging fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), fraudulent concealment (Count III), unlawful penalty (Count IV), and violations of G.L.c. 93A (Count V).[1] Nashawtuc now moves for summary judgment on the remaining counts. For the reasons stated below, Nashawtuc’s motion for summary judgment is DENIED as to the misrepresentation (Counts I and II) and violations of G.L.c. 93A counts (Count V), and ALLOWED as to unlawful penally (Count IV).
Background
The undisputed facts are as follows. Watson attended a prospective member cocktail reception hosted by Nashawtuc in Concord on December 3, 1997. One of the purposes for the reception was to provide interested persons with information about becoming a GWL member at Nashawtuc. GWL members lack full membership privileges but can use the pool, health club, tennis facilities and dining room. The initiation fee to become a GWL member is a non-refundable $12,500.00, plus monthly dues.
Watson submitted an application and was accepted as a GWL member in April 1998, at which time he also paid the initiation fee. In late 1999, Watson had only moved from the mid-80s on the wait list to number 63. At that time he was told it would take about another six years for him to become a full member and that he would have to pay another $5,000.00 to remain on the list. On December 30, 1999, Watson terminated his membership and demanded a refund of the initiation fee.
On January 6, 2000, Watson sent a letter to Nashawtuc demanding the refund again. Nashawtuc refused to refund the fee. Watson’s counsel then sent a demand letter to Nashawtuc, pursuant to G.L.c. 93A, on'March 1, 2000. On April 5, 2000, Watson sent a superseding demand letter to Nashawtuc. Nashawtuc responded by letter on May 1,2000, refusing to refund the fee.
In his complaint, Watson alleges three representations were made to him by Ronald Wilson at the prospective member reception. He alleges that Wilson told him Nashawtuc caps its full golf membership at 301 members, the annual turnover rate is 10-15%, and it would take him approximately 2 years to become a full member. Watson alleges the second and third statements were false.
Discussion
The court grants summary judgment, pursuant to Mass.R.Civ.P. 56, where there are no genuine issues of material fact, and if viewing the entire record in the light most favorable to the non-moving party, the moving party demonstrates it is entitled to judgment as a matter of law. Kourouvacllis v. General Motors Corp., 410 Mass. 706, 711 (1991). The moving party has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 112 (1990). When it is the defendant’s motion for summary judgment and several inferences may be drawn, this court must consider the reasonable inferences that are favorable to Watson. Coveney v. College of the Holy Cross, 488 Mass. 16, 17 (1983). This Court considers the pleadings, affidavits, answers to interrogatories, depositions, and exhibits submitted in arriving at its conclusion on this motion. Mass.R.Civ.P. 56(c).
*219 I. Fraudulent Misrepresentation
A party claiming fraudulent misrepresentation must be able to show five elements: (1) a misrepresentation; (2) made with intent to induce another to act; (3) made with knowledge of its untruth or with reckless disregard of the falsehood, or an utterance of a half-truth which in effect was a lie; (4) made with the intent that it should be acted upon and it was; and (5) damages as a result. See Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 357 Mass. 40, 44 (1970), quoting Restatement Torts §525.
It is undisputed from the invitation that Watson received and from deposition testimony that Nashawtuc held the cocktail reception to provide information to Watson that would persuade him to join Nashawtuc as a GWL member. Therefore, any statements made to him were made with the intent to induce him to act.
There are, however, several material issues of fact remaining as to this count. First, Watson claims Nashawtuc, through its agent Ronald Wilson, misrepresented that the turnover rate at Nashawtuc was 10-15% annually and that it would be approximately 2 years before Watson could become a full golf (regular) member. Nashawtuc, however, claims that these statements were not misrepresentations because they were not false.
Watson has argued that there is evidence that the turnover rate was 2% for the year proceeding the reception, and that Nashawtuc has selected a self-serving sample from which to calculate the rate. Nashawtuc, on the other hand, claims Watson has confused the full turnover rate with the wait list turnover rate. The wait list turnover rate is the pertinent number.
There is data supporting both propositions. There is evidence that the annual turnover rate for full golf members during the five fiscal years preceding December 1997 was 10%. There is also evidence, however, that the turnover rate for the GWF in the year preceding December 1997 was 2%. Therefore, a jury question exists as to whether the representation made to Watson meant the golf wait list turnover rate or the full turnover rate, and what the actual rate was.
Second, there is a material question of fact as to whether Wilson’s statements did in fact induce Watson to act. Watson did not investigate or attempt to verify any information stated to him at the reception. Nashawtuc argues this creates a reasonable inference that Watson was not relying on the information; he had already made up his mind. Watson, however, claims there is also a reasonable inference that he relied solely on the information given to him. Since there are two equally plausible inferences, this Court must consider the reasonable inference that is favorable to the plaintiff, thus sending this case to a jury. Coveney, 488 Mass. at 17.
Third, there is also a jury question concerning whether Wilson made the statements with knowledge of their untruth or with reckless disregard for the truth. The jury must first decide whether Wilson, as club president and the incoming chairperson of the committee, should have known the true turnover numbers and, second, whether he also should have known what kind of information Watson was looking for. Thus, there is a material issue whether Wilson inadvertently, or intentionally or recklessly, gave Watson the annual turnover rate knowing Watson was in fact interested in the GWL turnover rate.
Fourth, whether Watson reasonably relied on any misrepresentations presents a question of fact. Watson alleges that, knowing Wilson was the incoming chairperson of the committee and the club president, he reasonable relied on statements Wilson made at the party concerning membership turnover rates. He further alleges that he reasonably relied on the statements about how long it would take him to become a full member.
Nashawtuc, however, states that Watson never investigated any of the information. He never called or wrote the club asking for proof of its turnover rates. Nashawtuc also states that it and its agents never made any promises or guarantees to Watson concerning the amount of time he would have to remain on the wait list before becoming a full golf member. Therefore, Nashawtuc argues that Watson did not reasonably rely on the statements made at the reception. This is a material issue of fact and, thus, a question for a jury.
Finally, whether the statements caused Watson’s damages is also a question of fact. Watson has submitted sufficient evidence to show that he has suffered damages. He lost the $12,500.00 initiation fee and the pool, tennis and dining privileges fees. It is a question of fact, however, whether Nashawtuc’s actions caused Watson to incur these damages, especially whether Watson can attribute the annual dues for the pool, tennis, and dining privileges to the statements. Watson claims he only paid the dues and maintained the limited membership in the hopes of soon becoming a full member. Nashawtuc argues, however, that Watson received privileges he would not have otherwise enjoyed because of the dues he paid. Therefore, whether the statement caused Watson’s loss and the final calculation of damages are questions that should be resolved by a jury.
Accordingly, Nashawtuc’s motion for summary judgment as to Count I, Fraudulent Misrepresentation, is DENIED.
II. Negligent Misrepresentation
A party claiming negligent misrepresentation must be able to show “a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the *220 plaintiffs detriment.” Ravosa v. Zais, 40 Mass.App.Ct. 47, 52 (1996), quoting Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991).
There are several questions of material fact as to this count. First, as with the fraudulent misrepresentation claim, whether Watson justifiably relied on Nashawtuc’s statements is also a question of fact for the jury. Second, there is a material question of fact, again as in the fraudulent misrepresentation claim, whether the statements were in fact false. As above in connection with the fraudulent misrepresentation claims, the statements were made to persuade Watson in his decision to join Nashawtuc.
Third, as discussed in connection with the fraudu-. lent misrepresentation claim, whether the statements caused Watson’s damages is also a question of fact. Watson did lose the $12,500.00 initiation fee and the dues he paid for pool, tennis and health club privileges. Whether these losses were caused by Nashawtuc’s alleged misrepresentations and what the ultimate damages are matters for a jury to decide.
Finally, whether the parties failed to exercise reasonable care or competence in obtaining or communicating the information is a question of fact for a jury. There is evidence that Nashawtuc may not have used reasonable care in communicating the information to Watson. There is evidence that Wilson may not have been clear about what turnover rate, the GWL or the full membership rate, he was describing to Watson. A question of fact exists as to whether Wilson should have known that clarity concerning which rate he was quoting would matter to Watson. A question of fact also exists as to whether Wilson failed to use reasonable care in investigating all the relevant turnover rates and in estimating how long Watson would be on the wait list before he made the statements. Therefore, this is a question of fact that should also be presented to a jury.
Accordingly, Nashawtuc’s motion for summary judgment as to Count II, negligent misrepresentation, is DENIED.
III. Unlawful Penalty
Watson claims that the non-refundable $12,500.00 initiation fee for the GWL is an unlawful penally. Liquidated damages clauses will only be valid if at the time the parties entered into the contract the potential damages were difficult to determine and the liquidated damages were a reasonable forecast of damages expected to occur in the event of a breach. Kelly v. Marx, 428 Mass. 877, 879 (1999).
First, to uphold liquidated damages, there must first be a breach of contract. Here, there was no breach of contract. Nashawtuc never promised or guaranteed that Watson would be a full member within two years; it was just an estimate. Watson voluntarily resigned his limited membership. Therefore, Nashawtuc did not breach any agreement.
Second, potential damages were difficult to determine when the parties entered the arrangement. Nashawtuc had no way of anticipating whether there would be another person to take Watson’s place on the GWL should Watson wish to cancel his membership and demand a refund. Further, Nashawtuc had no way of foretelling when and how many members would demand refunds and how much of the initiation fees it would have already used. Therefore, it would have been difficult for Nashawtuc to have anticipated its damages.
Third, a non-refundable initiation fee was a reasonable forecast of damages Nashawtuc expected to incur. By asking for a refund, Watson was seeking to deprive Nashawtuc of $12,500.00 that Nashawtuc already used as working capital. Nashawtuc cannot reclaim that money by simply finding another GWL member to take Watson’s spot. Any subsequent GWL initiation fee would also go toward working capital. Therefore, the non-refundable fee was a reasonable forecast of damages. Thus, Nashawtuc’s motion for summary judgment as to count IV, unlawful penalty, is ALLOWED.
IV. G.L.c. 93A
Failure to disclose material facts and representations that may deceive consumers violate G.L.c. 93A, §2. See 940 Code of Mass. Regs. 3.16(2), 3.05(1). Negligent misrepresentations are also actionable under G.L.c. 93A, §2. See Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985). Hence, because there are still material issues of fact as to the misrepresentation claims, Watson’s chapter 93A claim also survives.
Nashawtuc’s motion for summary judgment on Watson’s chapter 93A claim must fail for two additional reasons. First, contrary to Nashawtuc’s argument, non-profit organizations, such as Nashawtuc, are not always exempt from chapter 93A. See Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 26-27 (1997). As stated by the Supreme Judicial Court, if the
institution’s business motivations, in combination with the nature of the transaction and activities of the parties, establish a business context. . . G.L.c. 93A will apply because the institution has inserted itself into the marketplace in a way that makes it only proper to be subject to the rule of ethical behavior and fair play.

Id.

Second, this transaction was not “private in nature” such that it would be removed from the purvey of chapter 93A. See Begelfer v. Najarian, 381 Mass. 177, 191 (1980) (where the factors which determine whether a transaction is private are the nature of the transaction, the character of the parties, the activities in which the parties are involved, whether similar transactions have been undertaken in the past, *221 whether the transaction was motivated by business or personal reasons, and whether the participants played an active role in the transaction).
Nashawtuc has inserted itself in to the marketplace by actively recruiting new members from the community who will pay Nashawtuc for the privilege of using its name, its services, and its facilities. Nashawtuc’s recruiting actions were intended to drum up business for the golf course and bring in revenue. Although the transaction may have been motivated by personal reasons on the part of Watson, Nashawtuc was driven by business reasons. Furthermore, both Nashawtuc and Watson were actively involved in all phases of the business transaction. Nashawtuc’s actions are covered by G.L.c. 93A and, therefore, Nashawtuc’s motion for summary judgment on Count V, chapter 93A violation, is DENIED.
ORDER
For the foregoing reasons, it is hereby ORDERED that Nashawtuc’s motion as to Counts I, II, and V be DENIED and that Nashawtuc’s motion for summary judgment as to Count IV be ALLOWED.

 This court (Haggerty, J.) dismissed the fraudulent concealment claim on August 7, 2000.