Cosgrove, Robert C., J.
Plaintiffs Glenn and Karen Doyle filed this action against CitiMortgage, Inc. seeking to invalidate an allegedly wrongful foreclosure on their property at 67 Greenfield Lane in Scituate. This matter is before this Court on CitiMortgage’s Motion for Summary Judgment on the plaintiffs’ claim for *313 misrepresentation. For the reasons discussed below, the motion is denied.
Background
The undisputed facts, and the disputed facts viewed in the light most favorable to the plaintiffs, as revealed by the summary judgment record are as follows. Glenn and Karen Doyle are the title holders to property located at 67 Greenfield Lane in Scituate (“the Property”). On January 29, 2003, the Doyles signed a promissory note' for a $300,000 loan from CitiMortgage, Inc. (“CMI”) at an interest rate of 7.25% to be repaid in monthly installments over the next thirty years. The same day, Glenn Doyle granted CMI a mortgage on the Property in the amount of $300,000. The mortgage provides that the “Borrower shall not be released from Borrower’s obligations and liability under this Security Instrument unless Lender agrees to such release in writing.”
In June of 2006, the Doyles began to miss monthly payments as required by the note and mortgage. By letter dated June 21, 2006, CMI notified the Doyles that their mortgage payment was past due and that they owed $5,186.44 including late charges and delinquency fees. On July 3, 2006, CMI sent the Doyles a demand letter informing them that the note was in default and demanding that they pay $7,690.52, including $88.28 in late charges and $39.00 delinquency expenses, by August 3, 2006, in order to prevent acceleration of the loan and sale of the Property. On August 2,2006, CMI sent the Doyles a second demand letter informing them that the note was in default, the credit bureaus had been informed of their delinquency, and demanding that they pay $5,105.61, including $26.00 in fees.
Between 2006 and 2011, the Doyles continued to miss payments and remained in default on the note and mortgage. CMI continued to send correspondence to the Doyles indicating that payments were owed and required in order to prevent foreclosure.[1] The Doyles were placed on repayment plans more than once and applied for loan modifications several times. On April 16, 2007, CMI sent the Doyles a letter stating:
Your request for a repayment plan has been approved. Your account is now delinquent for the months of 1/01/07 through 4/01/07 for $10,745.35 including $429.73 in late charges, $54.00 in delinquency expenses and $27.50 in other fees.
PLEASE SIGN THE ATTACHED AGREEMENT AS YOUR ACCEPTANCE OF THE PLAN AND RETURN IT TO OUR OFFICE IMMEDIATELY.
Page two of this letter set forth specific repayment amounts due on various dates between 4/25/07 and 3/20/08. On April 21, 2007, the Doyles executed and returned the repayment plan. However, the Doyles breached the plan and CMI sent them a letter dated June 29, 2007 which stated: “Because you have not kept the terms of your forbearance agreement with us, we have cancelled it.”
On October 8, 2009, CMI provided the Doyles with a Trial Period Plan (‘TPP”) under the Home Affordable Modification Program (“HAMP”), which was the first step in evaluating them for a permanent loan modification. The TPP states that it does not modify the note or the mortgage, and that the Doyles had to apply and be approved before any loan modification took effect. The TPP states: “(A]ll terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or part of the obligations contained in the Loan Documents.” The TPP further states that the Doyles remained in default on the loan and mortgage and that CMI did not waive any of its rights under those contracts by sending them the TPP.
The TPP provides that if the Doyles wished to participate in the HAMP, they would have to make three separate payments of $2,557.95. The first was due, along with the executed plan and all required income documentation, by November 1, 2009. The TPP states: “Your remaining trial period payments in the amount of $2,557.95 per month will be due on before 12/02/09 and 1/01/10. These payments should be sent instead of, not in addition to, your normal monthly mortgage payment. ’’The TPP states that if the Doyles fail “to provide all information and documentation required by Lender, the Loan Documents will not be modified and th[e] Plan will terminate. In this event, Lender will have all of the rights and remedies provided by the Loan Documents.” The TPP notes that CMI may report the Doyles’ loan as delinquent to credit reporting agencies even if they make their trial period payments on time. The HAMP Hardship Affidavit, which accompanied the TPP, states: “I/We agree that when the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities and shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.” The TPP notes that the actual monthly payments under any permanent loan modification might be different from those under the TPP.
CMI’s Consolidated Note Report for the Doyles’ account indicates that on October 29, 2009, CMI sent the Doyles a letter stating that no TPP package had been received, followed by a text and email on November 2 concerning missing and incomplete documents.
It is undisputed that the Doyles made payments of $2,557.95 on November 16, 2009 and December 31, 2009. CMI has no record of the Doyles making the January 1, 2010 payment, although Karen Doyle asserts in her affidavit that she made all three payments.
*314 The Consolidated Note Report indicates that CMI sent the Doyles a letter on January 29, 2010 stating that the missing payment and documents were required. The Report indicates that on March 25, 2010, incomplete or missing documents included proof of income, pay stubs, and “P&L.” On June 11, 2010, the Report indicates: “Account removed from HAM due to missing document(s) and payment(s).”
On June 14, 2010, CMI sent the Doyles a letter notifying them that their loan was in default and that payment of $68,658.06 was required by July 14, 2010 to cure the default. On June 26, the Consolidated Note Report for their account states, “HAM review, HAM failed no documents.”
On July 12, the Consolidated Note Report indicates that CMI spoke to Karen and advised: “she should send in updated info so tha[t] she can be reviewed and put back in the mod.” On July 22, the Doyles sent a fax to CMI which included a profit and loss statement for Doyle Computer Services, a completed HAMP affidavit, a profit and loss statement for Karen M. Doyle Marketing Consulting, and a South Coastal Bank checking account statement for August 11, 2010 through September 10, 2010.
On July 30, 2010, CMI sent the Doyles a letter stating:
Thank you for your interest in a mortgage modification. CitiMortgage appreciates the opportunity to review your mortgage and your concerns. We are disappointed that we cannot approve a mortgage modification under the government’s Home Affordable Modification Program (HAMP) at this time. Your mortgage terms will remain unchanged.
We consider a number of factors in making credit decisions. In your case, we were unable to approve a HAMP loan modification of your mortgage terms because:
-Request Incomplete. We are unable to offer you a Home Affordable Mortgage because you did not provide us with the documents we requested. A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days ago.
Karen Doyle avers that each time she and her husband applied for loan modifications between 2006 and 2011, she submitted all the documents requested by CMI but was told multiple times that CMI never received the documents or that the documents submitted were incomplete. She opines that the reason given in the July 30,2010 letter, incomplete documentation, is “false.” Karen further avers that she had multiple conversations with unidentified agents of CMI who refused her offers to make monthly payments in amounts she could afford during the loan modification consideration process. The CMI agents told her not to worry and that monthly payments missed during the forbearance process would not be considered with respect to approving a loan modification. On one occasion, she sent a monthly payment to CMI, but it was returned to her and she was told that CMI would only accept the total amount of the Loan. Karen avers that the failure to make partial payments during the modification consideration process resulted in the adding of interest and late payment fees to their debt.
On July27,2010, the Doyles received what appears to be a generic form letter from CMI that stated:
Dear Glenn A Doyle & Karen Doyle,
Citi may have a way for you to keep your home and catch up your payments over time. All you need to do is call me directly today to meet and review all of your mortgage options.
Ease your worries about your payments. Call to schedule an appointment to discuss your mortgage options.
Could you lower your payment through a Modification?
Do you have the best interest rate for your situation?
Could a mortgage modification provide payment relief?
Don’t struggle alone through a job loss, illness or unexpected expenses. You are a valued customer and we may be able to help you get through this difficult time.
Make the one call that you need to make.
Call 1-866-915-9417 Option 4 Ext. 80526 today! Sincerely,
Jim Janczy
Vice President
P.S. Citi is committed to you and your community. We may be able to find you a more affordable mortgage payment and help you keep your home. Cafi 1-866-915-9417 Option 4 Ext. 80526 today!
On August 10, 2010, Karen sent a letter to Janczy at CitiMortgage, 6801 Colwell Blvd., Irving, TX which stated:
I recently received your letter dated July 27 regarding a modification for our mortgage. I would like veiy much to speak with you about this, but I have called your office several times and am unable to leave a message because your mailbox is fuü. I have also tried to get and fifi out the Homeowner’s Assistance package you refer to in your voice mafi message, but I get an Error 404 when trying to access the page on your web site.
We have been trying for some time to get a resolution to our situation, and have submitted information on a number of different occasions. There has been very little follow through on the part of Citi, so it would be very helpful if we could talk with you personally. We are very eager to resolve this situation so that we can keep our home and bring our mortgage current.
*315 The same day, Karen faxed Janczy the Doyles’ HAMP affidavit.
The Consolidated Note Report for the Doyles’ account indicates that CMI spoke to Karen on September 23, 2010 and: “advised docs needed to process with HAM mod, gave 72 hou[rs] to send in docs. Case 228: missing docs. 8/18 Required HAMP docs: self employed proof income: last quarterly profit & loss stmt 1 mon bank stmt hardship affidavit. Via fax to att Sharon A. Hunt.” On September 28, Karen faxed Hunt a new hardship affidavit and a Profit and Loss Statement for her freelance business.
The Consolidated Note Report indicates that CMI spoke to Glenn on October 5, 2010 and: “advised was closed on 9/29 [d]ue to no docs rcvd. Reviewed filent [sic] do see docs uploaded on 10/2. Will contact agent to see if file can be opened.” The Report indicates that CMI also spoke to Karen on October 28 and: “told case 228 is closed be they didnt sen[d] info we needed. Checked file net for docs they sent and docs not here. Actually got docs on 10/2 which was too late.” The Report indicates that CMI spoke to Glenn on November 17, 2010 and: “Stated Mod was closed out//sta client that he did not send in updated info//b mod ... client stated he tried to send in pymt. Advised client cannot due to foclsr.” The Report indicates that CMI had a conversation with Glenn on February 15, 2011 in which it advised him of the Property’s foreclosure status, and noted: “Closed off for review due to docs some time ago.”
On February 23, 2011, the Doyles were served with a Notice of Mortgage Foreclosure Sale, which stated that CMI was exercising its statutoiy power of sale to foreclose on the Property under the note and the mortgage. Karen avers that she contacted CMI and expressed her belief that the loan was in forbearance while CMI evaluated them for a loan modification. She avers, “At that time it was still represented to us that our loan modification was still being reviewed.” On March 17, 2011, the Consolidated Note Report for the Doyles’ account indicates that CMI spoke to Glenn and: “Brrw believes atty is going to stop fore. Brrw claims he provided docs 5 separate times . . . Total am due including late chgs & fees: $88,731.89 7/1/0 through 3/1/11 Unable to bring acct current through pymt. plan.”
By letter dated March 26, 2011, a Default Research and Litigation Specialist for CMI responded to the Doyles’ renewed request for a loan modification, stating:
In reviewing the Loss Mitigation notes, it appears there is no repayment plan available at this time because of the delinquency amount of $88,731.89. The Loss Mitigation team has declined the HAM program because [ ] documentation was not received or received on time. Also the application has been closed because of no response from you. As of today’s date your loan is paid to June 1, 2008. The last amount received from you was on December 31, 2009 in the amount of $2,557.84. If you have any further questions, please call the Loss Mitigation Department. . .
■ The Doyles filed this action on April 26, 2011 and obtained a preliminary injunction against foreclosure. Count I of their Amended Complaint alleged misrepresentation, Count II alleged violation of Chapter 93A, and Count III alleged wrongful foreclosure in violation of G.L.c. 244, §14. On November 13, 2012, CMI filed a Rule 12(b)(6) motion to dismiss the Amended Complaint. In a Memorandum of Decision and Order dated March 12, 2013, this Court (Hely, J.) dismissed Counts II and III but allowed Count I to survive.[2]
As of January 15, 2014, the Doyles’ account had an outstanding escrow balance of $47,474.07, reflecting amounts that CMI paid over a period of several years to cover property taxes and insurance on the Property, which are the Doyles’ responsibility. As of February 21, 2014, the mortgage was delinquent in the amount of$191,148.89.
Discussion
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corn, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805,809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
CMI moves for summary judgment on Count I of the Amended Complaint on the ground that the Doyles have no reasonable expectation of demonstrating misrepresentation at trial. To prove misrepresentation, the plaintiffs must prove that the defendant knowingly made a false statement of material fact for the purpose of inducing the plaintiffs to act thereon, and that they relied upon the representation as true to their damage. Twin Fires Investment, LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 423 (2005); Equipment & Sys. For Indus., Inc. v. Northmeadows Constr. Co., Inc., 59 Mass.App.Ct. 931, 931 (2003). CMI argues that the Doyles’ reliance on oral assurances that monthly payments missed during the forbearance process would not be considered with respect to a loan modification was unreasonable as a matter of law.
*316 The reasonableness of a party’s reliance is often a factual question for a jury; however, summary judgment is proper where no reasonable factfinder could conclude that reliance was reasonable under the circumstances. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 (2004); Nota Cortstr. Corp. v. Keyes Assoc., Inc., 45 Mass.App.Ct. 15, 20 (1998). For example, it is unreasonable as a matter of law to rely on prior or contemporaneous oral misrepresentations that are specifically contradicted by the terms of a written contract. Masingill v. EMC Corp., 449 Mass. 532, 541 (2007); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. at 59. See also Kuwati Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003); McEuoy Travel Bureau, Inc., 408 Mass. 704, 710 (1990) (when parties have executed integrated written contract which addresses point at issue, it is unreasonable for plaintiff to rely on contrary representation by defendant during course of negotiations).
Here, the TPP expressly states that the terms of the note and mortgage remained in full force and effect, the Doyles remained in default, and the execution of the TPP did not waive any of CMI’s rights with respect to the default or release any of the debt. The TPP further states that the three scheduled trial payments are in lieu of, not in addition to, the normal monthly mortgage payments, but is silent with respect to mortgage payments thereafter. The alleged oral statements that the Doyles need not make monthly mortgage payments during the forbearance process arguably contradict these written provisions. Nonetheless, the cases cited by CMI appear to be inapposite because the summary judgment record does not establish that the alleged oral misrepresentations were made prior to October 8, 2009, the date on which the parties entered into the TPP. Rather, viewing the record in the light most favorable to the Doyles, it is a reasonable inference that the representations at issue were made over a period of time following the execution of the TPP.[3] Accordingly, CMI has not demonstrated that the Doyles’ reliance on the oral statements was unreasonable as a matter of law.
CMI further argues that the Doyles have no reasonable expectation of proving that the alleged misrepresentation caused them harm. To prevail on a misrepresentation claim, the plaintiffs must prove that any losses they incurred were caused by their reliance on the false statements alleged. Kuwati Danish Computer Co. v. Digital Equip. Corp., 438 Mass. at 469; Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982). The Doyles contend that they failed to make regular mortgage payments during the HAMP process in reliance on CMI’s misrepresentation, resulting in the denial of a loan modification based on an excessive arrearage.
However, the summary judgment record does not support this assertion. The Doyles cite the March 26, 2011 letter which states, “In reviewing the Loss Mitigation notes, it appears there is no repayment plan available at this time because of the delinquency amount of $88,731.89. The Loss Mitigation team has declined the HAM program because [ ] documentation was not received or received on time.” The letter on its face distinguishes between a repayment plan, which allows the borrower to catch up on delinquent payments under the existing loan, and loan modification under HAMP, which results in entirely new loan terms. With respect to the loan modification, the March 26 letter clearly indicates that the reason for CMI’s denial was inadequate documentation. This is consistent with the earlier July 30, 2010 letter in which CMI stated: “We are unable to offer you a Home Affordable Mortgage because you did not provide us with the documents we requested.” It is also consistent with numerous entries in the Consolidated Note Report of the Doyles’ loan account which indicate that the Doyles were repeatedly informed that their loan modification request could not be processed due to inadequate documentation, and their request for HAMP consideration eventually was denied and the file closed for inadequate documentation. Nothing in the summary judgment record, other than the Doyles’ unreasonable reading of the March 26 letter, raises a genuine issue of material fact with respect to whether the loan modification was denied due to excessive arrearage. Accordingly, CMI appears to be correct that the Doyles have no reasonable expectation of proving a causal connection between the alleged misrepresentation and the denial of a loan modification. See Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 290 n.7 (1993) (plaintiff must show causal connection between deception and loss); Reisman v. KPMG Peat Marwick, LLP, 57 Mass.App.Ct. 100, 112, rev. den., 439 Mass. 1105 (2003) (plaintiff must show that misrepresentation was substantial factor in determining the course of conduct that results in his loss).[4]
The question then becomes whether the record shows that the Doyles suffered any other damage as a result of their reliance on the alleged misrepresentation. See Connelly v. Bartlett, 286 Mass. 311, 315 (1934) (liability for misrepresentation does not exist in absence of proof of damages); Ravosa v. Zais, 40 Mass.App.Ct. 47, 54 n.11, rev. den., 422 Mass. 1108 (1996) (proof of damages flowing from misrepresentation is essential to recovery). The making of reduced trial payments under a TPP pursuant to HAMP is not pecuniary loss for purposes of a misrepresentation claim because the plaintiffs had a pre-existing contractual obligation to make monthly mortgage payments, and a lesser payment for three months creates a pecuniary benefit. Kiluk v. Select Portfolio Servicing, Inc., 2011 U.S. Dist. LEXIS 155999 at *19 (D.Mass. 2011) (Saylor, J.). Under those circumstances, a successful misrepresentation claim requires some other pecuniary harm, such as incurring increased fees, losing opportunities to pursue financing, or foregoing other opportunities to avoid foreclosure. Id. at *20.
*317 The assertion in the Doyles’ brief that if they had made partial payments to reduce their arrearage, they would have been approved for federal aid under HAMP or been offered other assistance with respect to their debt is insufficient to forestall summary judgment, because it is not supported by admissible evidence in the record.
The Doyles further allege that they were harmed because the amount of their default increased between October 8, 2009 and March 26, 2011, the period in which they did not make partial payments in reliance on CMI’s misrepresentation. CMI argues that “Plaintiffs misapprehend the nature of ‘default’ under the terms of their Mortgage. Once they were in default, which began as early as July 2006 . . . they remained in default until the present day, and CMI would have been within its rights at any time to exercise its foreclosure power.” (Emphasis in original.) Nonetheless, the record indicates that the Doyles continued to accrue late penalties and interest during the modification process that would have accrued at a lesser amount had they continued to make payments during that period. Cf. Kiluk v. Select Portfolio Servicing, Inc., 2011 U.S. Dist. LEXIS 155999 at *19 (suggesting that incurring increased fees based on lender’s misrepresentation concerning TPP loan would constitute pecuniary loss for purposes of misrepresentation claim).[5] Accordingly, CMI is not entitled to judgment as a matter of law on the ground that the Doyles cannot demonstrate that they relied on the alleged misrepresentation to their detriment.
Order
For the foregoing reasons, Defendant CitiMortgage, Inc.’s Motion for Summaiy Judgment is denied.

Letters were sent on September 1,2006, October 3, 2006, November 2, 2006, December 4, 2006, January 10, 2007, March 15, 2007, May 30, 2007, July 2, 2007, August 1, 2007, September 10, 2007, October 2,2007, November 5,2007, and December 3, 2007.

Although this one-page decision is entitled, “Memorandum of Decision and Order on Defendant’s Motion to Dismiss,” the order states: “Summary judgment will enter dismissing Counts II and III of the amended complaint. Summaiy judgment is denied on Count I.” The reference to summary judgment appears to be an error insofar as the court applied the Rule 12(b)(6) standard and analyzed only the allegations of the Amended Complaint. There is thus no merit to the plaintiffs’ argument that Judge Hely already determined that they have shown a genuine issue of material fact with respect to misrepresentation.

Karen’s affidavit states that she applied for loan modifications “several times between 2006 and 2011,” that she made the three trial payments beginning in October of 2009, and that “[d]uring this entire process” she had multiple conversations with CMI in which she was told not to woriy because missed monthly payments would not be considered in connection with the loan modification approval.

There is no merit to the Doyles’ contention that summaiy judgment should be denied because they have raised a factual issue about the truth of CMI’s reason for denying a loan modification. The validity of the proffered reason is irrelevant to the claim that CMI misrepresented that they did not need to make mortgage payments during the modification process. Accordingly, any factual dispute in the record with respect to the timeliness or completeness of the Doyles’ documentation is not material for purposes of Rule 56. See Dennis v. Kaskel, 79 Mass.App.Ct. 736, 741 (2011) (fact is “material” when it might affect the outcome of the suit under the governing substantive law).

CMI’s statement of facts recites that the delinquency on the Doyles’ mortgage account was $68,660 on July 30, 2010, the delinquency on the loan was $88,731.89 by March 26, 2011, and the delinquency on the mortgage account was $191,148.89 by February 21, 2014.